1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - X
3
   UNITED STATES OF AMERICA,    :   09-CR-395(FB)
4                                :
                                 :   U.S. Courthouse
5                                :   Brooklyn, New York
        -against-               :
6                                :   TRANSCRIPT OF
                                 :   TRIAL
7                                :
                                 :
8    KIOND JONES and             :   October 8, 2010
     ANTHONY PRADDY,             :   10:00 a.m.
9                                :
        Defendants.             :
10   - - - - - - - - - - - - - - X

11   BEFORE:
                    HONORABLE FREDERIC BLOCK, U.S.D.J.,
12                  and a Jury.
     APPEARANCES:
13
     For the Government:      LORETTA E. LYNCH, ESQ.
14                           United States Attorney
                             271 Cadman Plaza East
15                           Brooklyn, New York 11201
                             BY:  SETH D. DuCHARME, ESQ.
16                                ANDREW E. GOLDSMITH, ESQ.
                                  Assistant U.S. Attorneys
17

18   For the Defendant
     Jones:                  DAVID SMITH, ESQ.
19                           RANDY ZELIN, ESQ.

20
     Praddy:                 MITCHELL DINNERSTEIN, ESQ.
21

22   Court Reporter:      Holly Driscoll, CSR
                          Official Court Reporter
23                        225 Cadman Plaza East
                          Brooklyn, New York 11201
24                        (718) 613-2274

25   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Assisted Transcript.

1  (The following takes place out of the presence of
2  the jury.)

3  (Time noted:  11:25 a.m.)

4  THE CLERK:  Criminal cause on trial, United States
5  of America versus Jones and Praddy.  All counsel and parties
6  are present and accounted for.

7  THE COURT:  Good morning, everybody.

8  MR. DuCHARME:  Good morning, Your Honor.

9  MR. SMITH:  Good morning, Your Honor.

10  THE COURT:  Let's process what we have here.

11  Court Exhibit 21, the request for the testimony of
12  Sergeant Scott Kinsky -- Mr. Innelli, stay by here.

13  THE CLERK:  Sorry, I was going to get
14  Mr. Dinnerstein, he's not here.

15  THE COURT:  Mr. Dinnerstein is not here.

16  THE CLERK:  No, I just realized it, I was going to
17  go get him.

18  The agent is going to go get him.

19  MR. SMITH:  Here he comes.

20  THE COURT:  This is silly stuff, you know, I agree
21  that it's probably not relevant to the attempted murder but so
22  what.

23  Mr. Dinnerstein, good morning.

24  All right.  So, we have Court Exhibit 21 requesting
25  the testimony of Sergeant Scott Kinsky as it relates to the

1    raid of K. Jones house in 2007.

2         Now, Mr. Innelli advised me by telephone this

3    morning that you folks agreed to where that testimony was

4    located and that the testimony was sent into the jurors I

5    guess about 10:00 or 10:15.

6         Identify for the record what was sent into the

7    jurors, Mr. Innelli, and what markings you placed on that

8    testimony.

9         THE CLERK:  We marked the exhibit as 21-A and it's

10   James, voir dire by Mr. Dinnerstein, and it is pages 99 and

11   100.  It's James, cross by Mr. Dinnerstein, 163 and 164.  It's

12   Kienle's direct by Mr. Goldsmith, pages 1015 to 1041.  It's

13   pages 359 to 364 but I'm not too sure what the testimony is.

14   And then we have James, cross by King and it's 152 -- I'm

15   sorry, that's page 148 to page 152.  Dowdie's cross by Smith,

16   page 486 to 490.

17        THE COURT:  Wait a second.  This is the testimony of

18   Sergeant Scott Kinsky?  I asked you first, Mr. Innelli, to

19   just tell us what you did in respect to the first request

20   regarding the testimony of Scott Kinsky, just that portion.

21        THE CLERK:  I was given all the transcripts.

22        THE COURT:  Listen to me carefully so we can make a

23   proper record, okay.  Just tell us the pages that were sent

24   into the jurors and how you marked them, okay.  Did you mark

25   all of these requests as 21-A or did you have a 21-A, B and C?

1    THE CLERK:  All 21-A, Your Honor.

2    THE COURT:  So, this is all of 21-A?

3    THE CLERK:  Yes.

4    THE COURT:  And what you were trying to tell me is

5  all the testimony you sent in this morning in respect to the

6  three questions and not just Scott Kinsky as I asked you?

7    THE CLERK:  Yes.

8    THE COURT:  Let's start again, just tell me the

9  pages so we can have a record of what pages counsel agreed and

10  what you sent into the jurors in respect to the requests for

11  the testimony of Scott Kinsky only, do that again.

12    THE CLERK:  Counsel knows better than I do.

13    THE COURT:  All right, so you're not prepared to do

14  that.  Maybe we can just make a quick record please.

15    MR. SMITH:  Your Honor, for --

16    THE COURT:  Just the pages so we have a record.

17    MR. SMITH:  Page 1015 through 1541.  There were some

18  items redacted within that but that's the general scope.

19    THE COURT:  Okay.  You agreed to it.  What else?

20    MR. SMITH:  Yes.

21    THE COURT:  Anything else?

22    MR. GOLDSMITH:  Not on Kinsky.

23    THE COURT:  Does that satisfy the Kinsky request?

24    MR. SMITH:  Yes, Your Honor.

25    MR. GOLDSMITH:  Yes.

1    THE COURT:  Thank you very much.  That's part of

2    21-A.

3         Now, the next part of 21-A apparently deals with the

4    testimony of Dowdie and James on direct and cross as it

5    relates to the kidnapping of Hecclewood.  Just tell me the

6    pages that were sent into the jurors.

7         MR. SMITH:  Your Honor, on Mr. Dowdie's direct --

8         THE COURT:  No, just tell me the pages that were

9    sent into the jury.

10        MR. DINNERSTEIN:  359 through 364.

11        THE COURT:  That's it?

12        MR. DINNERSTEIN:  That's the direct.  And the cross

13   was 486 through 490.

14        THE COURT:  Anything else?

15        MR. DINNERSTEIN:  Not for Mr. Dowdie, Your Honor.

16        THE COURT:  Okay.  That takes care of the second

17   request.

18        In the future when we get these types of things be

19   mindful I want to make a record so just write down the pages

20   and you agree to what goes into the jurors and then when we

21   come back you can just say that, okay.

22        Anything else?

23        MR. GOLDSMITH:  Yes, Your Honor, on the second

24   request there was actually a second witness, Mr. James.

25        THE COURT:  There was what?

1     MR. GOLDSMITH:  There was a second witness included

2  in that second request, Mr. James.

3     THE COURT:  I'm trying to make it simple.  Was

4  anything else sent to the jurors in respect to the request

5  concerning Dowdie and James?

6     MR. SMITH:  Yes, Your Honor.

7     THE COURT:  Tell me what pages.

8     MR. SMITH:  Mr. James, it was pages 99 and 100, 163

9  and 164 -- 148 through 152 and 163 and 164.

10    THE COURT:  All right.  We made a proper record.  We

11 all agree.  In the future do it in advance, all right.  As you

12 probably realize as experienced attorneys, it is important to

13 have a clear record in case this matter goes to the circuit

14 court, it's part of our collective responsibilities to see

15 that that happens.

16    Now, the last thing that you have some issue about

17 is the testimony of Moses Osbourne regarding the attempted

18 murder and the defendants want to have included pages 550 to

19 552, line 5 and everybody has agreed that pages 532, line 25

20 to page 541, line 11 is going to go to the jurors as well as

21 545, line 17 to 549, line 8.  Are we all in agreement about

22 that?

23    MR. SMITH:  Yes, Your Honor.

24    MR. GOLDSMITH:  Yes, Your Honor.

25    THE COURT:  So, those pages will definitely be sent

1  in.  Now, I looked at 550 to 552, line 5 and it doesn't

2  specifically say anything about the attempted murder but so

3  what.

4       MR. GOLDSMITH:  Your Honor, that's all, just that it

5  didn't seem responsive.

6       THE COURT:  I mean I agree with you, it probably

7  doesn't specifically address the attempted murder but the jury

8  wanted Osbourne's testimony and it's part of the total

9  picture.  So, the government is probably right but why fuss

10  about it, it's Friday, maybe the jury will find this to be

11  helpful in terms of rendering a verdict before the long

12  weekend and sometimes we have to be practical about things,

13  right.

14       MR. GOLDSMITH:  Thank you, Your Honor.

15       MR. SMITH:  Thank you, Your Honor.

16       THE COURT:  So, all of this will go in including 550

17  to 552, line 5.

18       Mr. Innelli, you'll send it in forthwith, okay.

19       THE CLERK:  Yes.

20       THE COURT:  All right.  I'm thinking about not

21  having them come back on Monday if they do not reach a

22  verdict, it's the holiday, I'll have them come back on

23  Tuesday.  Be mindful about that in terms of how you handle

24  these requests in a practical fashion.

25       I have another one now which you just marked Court

1    Exhibit 22 just rendered a few minutes ago.  They requested an

2    escort break.  So, we get these periodic requests.  I assume

3    Mr. Innelli will take care of this in his usual inimicable

4    style.

5           THE CLERK:  Yes, he's doing it, they're getting a

6    break as we speak.

7           THE COURT:  Anything else we need to talk about?

8           Mr. Dinnerstein, your face seems a little bit more

9    turned down than usual.  I look forward to seeing that smiley

10   face especially since it is getting close to Halloween.

11          All right.  So, stay close.

12          (Time noted:  11:35 a.m.)

13          (Deliberations continue.)

14          (Continued on next page.)

15

16

17

18

19

20

21

22

23

24

25

1    (The following takes place out of the presence of

2 the jury.)

3    (Time noted:  3:05 p.m.)

4    THE COURT:  All right, everybody is here.

5    THE CLERK:  Yes, Judge.

6    THE COURT:  Let's try to turn this around quickly.

7    I marked as Number 23 this note that was rendered at

8 1:15:  Request Exhibit 437.

9    Mr. Innelli, was that sent into the jurors?

10    THE CLERK:  Yes, it was.

11    THE COURT:  All right.

12    And then on the same note:  Please let us know an

13 estimate when we can anticipate receipt of the direct of

14 S. James and cross of Osbourne.

15    And then at 2:45, it will be marked Court

16 Exhibit 249.  The following note:  We are at an impasse on a

17 count and request if there is any guidance we can have.  Also,

18 we are continuing to await previously requested testimony and

19 cannot continue deliberations at this time (direct S. James

20 and cross of Osbourne.)

21    They said they cannot continue deliberations at this

22 time on anything.

23    And then:  We are requesting an escorted break at

24 that time.  So, they're on their break now or they're back in

25 the jury room?

1    THE CLERK:  I think they're on their break.

2    THE COURT:  So, now you can stay here, we may need

3 you here.  Just stay calm.  There's some confusion about the

4 James and Osbourne testimony that was sent into the jurors,

5 apparently the court reporter mislabeled the testimony.

6    MR. GOLDSMITH:  That's right, Your Honor.

7    THE COURT:  Tell me how, I don't have it in front of

8 me.

9    MR. SMITH:  Your Honor, I have testimony written

10 down here.  They can simply be told that the James-direct is

11 page 99 and 100 and 163 through 164.  Those pages were

12 mislabeled in that --

13    THE COURT:  Just one second.  James-direct --

14    MR. SMITH:  James-direct is 99 through 100.

15    THE COURT:  Right.

16    MR. SMITH:  And 163 through 164.

17    THE COURT:  Okay.

18    MR. DINNERSTEIN:  Isn't this redirect?

19    MR. SMITH:  Right, redirect is 163 through 164.

20    THE COURT:  The direct is 99 through 100 and

21 redirect is 163 to 164.  And how was it mislabeled?

22    MR. SMITH:  99 through 100 is labeled James-voir

23 dire-Dinnerstein instead of James-direct-Goldsmith.

24    THE COURT:  Okay.  And the redirect, that was

25 mislabeled also?

1    MR. SMITH:  Yes, that is a mislabeled

2    S. James-cross-Dinnerstein when it should be --

3    THE COURT:  Okay, I'll just tell them that's the

4    direct, they were mislabeled by the court reporter

5    inadvertently.

6    What else?

7    MR. SMITH:  Then Osbourne cross is 545 through 552.

8    THE COURT:  Just one second.  Was 5 what?

9    MR. SMITH:  545 through 552.

10   THE COURT:  552.  And that was mislabeled how?

11   MR. SMITH:  It says Osbourne-direct-Goldsmith when

12   it should be Osbourne-cross-Zelin.

13   THE COURT:  Osbourne-cross-Zelin.  All right.  So,

14   we'll tell them that to clarify that.  And now, in respect to

15   the other question, they're at an impasse on a count, not all

16   counts, and if there's any guidance.

17   First, the government wants to opine on this

18   subject?

19   MR. GOLDSMITH:  Your Honor, I have an Allen charge

20   that was given in a previous case.

21   THE COURT:  I don't think we have to give an Allen

22   charge now.  It seems to be a little bit premature.  I could

23   if you all want me to.

24   MR. GOLDSMITH:  I'm not sure what other -- since

25   they didn't specify what count they are concerned about or

1 what their issue is.

2     THE COURT: I can also say they can render a verdict

3 on the other counts. A lot of times the jurors don't realize

4 they can do that.

5     MR. GOLDSMITH: They can do that.

6     THE COURT: I'm going to say that you're here for a

7 relatively short period of time considering the complexity of

8 the case, etc., etc., so the guidance I give you is to try to

9 reexamine, you know, the count as best as you can and also

10 that if you wish to render a partial verdict, that the law

11 allows that but I don't want you to do that unless you

12 absolutely feel you're at an impasse on that count or I can

13 give them the Allen charge in respect to that count.

14     What does the defense wish?

15     MR. DINNERSTEIN: My preference would be the first

16 part of that, that you tell them that they haven't been

17 deliberating that long but also the partial verdict is a

18 perfectly appropriate thing for them to do under these

19 circumstances.

20     THE COURT: No, I can do that but at the same time

21 they can deliberate on the other count. I don't have to tell

22 them that now. I'll say if they want to render a partial

23 verdict, it is Friday afternoon, they can do so and then we

24 can instruct them, based upon what that verdict is, whether

25 you folks wish or do not wish them to continue their

1 deliberations on that one count. That's a practical way of

2 dealing with it but I await your wise counsel.

3       MR. GOLDSMITH: Your Honor, I've never taken that

4 particular route.

5       THE COURT: Then again you've never tried a case

6 before Judge Block, right?

7       MR. GOLDSMITH: In fact I have, Your Honor.

8       THE COURT: I think you have. Which case was it?

9       THE CLERK: Mark Bolt.

10       MR. GOLDSMITH: The defendant was Mark Bolt. Thank

11 you, Mr. Innelli.

12       THE COURT: Mike has a better memory than I. The

13 question is not whether we've done it before, the question is

14 is it fair under the circumstances. It is Friday afternoon.

15 The question is whether you want to do it or not. I think it

16 is certainly not inappropriate from a legal standpoint.

17       MR. DuCHARME: Your Honor, I think our position

18 would be to encourage them to keep working at it, I mean it is

19 Friday afternoon, we don't want them to be overly tempted to

20 take an easy way out.

21       THE COURT: Do you think it is appropriate to give

22 the Allen charge now, so to speak?

23       MR. DuCHARME: It may well be.

24       MR. DINNERSTEIN: I'm opposed to it. I don't think

25 you should give an Allen charge at this point. I think you

1    should reach out for the partial verdict before giving an

2    Allen charge.

3            THE COURT:  You know, it's ten after three, my sense

4    is that I'll try to give them a little bit of a pep talk

5    without necessarily giving them a sort of structured Allen

6    charge and see where they are at 4:30 and then maybe toward

7    the end of the day I might be inclined to take a partial

8    verdict.  Does that sound like a fair route to travel down?

9            MR. SMITH:  Yes, Your Honor.

10           THE COURT:  Okay, so send the jurors in.

11           MR. GOLDSMITH:  Thank you, Your Honor.

12           THE CLERK:  I don't think they got their break now

13   because they're waiting for a court officer to come up.

14           THE COURT:  I'm going to read a little bit to them

15   from what my Allen charge is.  I won't tell them that, you

16   know, that part that we're going to have to retry the case

17   again, so to speak, but I'll tell them the rest of the charge.

18           (Time noted:  3:12 p.m.)

19           (Jury enters courtroom.)

20           THE COURT:  Okay, folks, as soon as we went out for

21   lunch at 1:15 you came in for a request, sorry it took a

22   little time to turn it around, but you were given Exhibit 437,

23   so you have that, right, and then at 2:45 you wanted to take a

24   little break, which is fine, it's a beautiful day today.  You

25   wanted to tell me both at 1:15 and at 2:45 that you were

1   concerned about whether you had all of the testimony of Jones

2   and Osbourne and you said you really couldn't continue with

3   your deliberations until you received it all.

4        You have it all, unfortunately the court reporter

5   inadvertently mislabeled things, okay, so this is what I want

6   you to know, the direct of James is page -- are pages 99 to

7   100, it is mislabeled and that may have caused you some

8   confusion.  It shows that you're on the ball.  The redirect of

9   James is on pages 163 and 164.  You have that.  I'm sure you

10  have those pages.

11       A JUROR:  We'll try to write it down.

12       THE COURT:  If you don't have those pages you should

13  have them so you let me know, those have been mislabeled

14  apparently.  Then, in Osbourne, the cross of Osbourne is 545

15  to 552 by Mr. Zelin and you have that also but it's mislabeled

16  once again.  So, you can double-check that and rest assured

17  that everything has been sent into you that you requested

18  except, unfortunately, the headings were just inadvertently

19  not put down correctly by our wonderful court reporters, okay.

20       Now, you asked me for any guidance as to the fact

21  that you're at an impasse on a count, I take a count to mean a

22  count, not all the counts, but a count, and as to whether

23  there's any guidance that we can have.

24       Well, initially I just want to let you know that

25  while you've been deliberating for I guess this is the end of

1  the second full day and you just had a snippet of the first

2  day, it's a long time but in the context of the case and the

3  complexity of it and the length of the charge and all the

4  questions you have to answer, it's not really that long a

5  period of time for deliberating jurors such as you folks to go

6  through all this material that you have diligently been

7  pursuing.

8          So, you know, let me just give you a little bit more

9  of a pep talk in respect to that one count and then you'll

10  continue your deliberations and see where you're at at the end

11  of the day.  It's a quarter of three so you will undoubtedly

12  stay here a little longer to see whether you can come to a

13  resolution.  Nobody is under any pressure.  If you can't come

14  to a correct determination that complies with your

15  responsibilities, then you'll come back next week.  I want you

16  to realize that that is something which I want you to consider

17  doing unless you are comfortable with coming to a decision

18  today, okay, so we are clear about that.

19          So, remember you have to decide the case based upon

20  the evidence that was introduced to you and consider what I

21  say and the evidence and all of the instructions that I

22  previously gave you and, you know, if you fail to agree on a

23  verdict in a particular matter, then the case or that issue is

24  still open and undecided but I want to remind you that the

25  task before you is one of conscientious decisions that you

1  have to make based upon the evidence and you must not

2  surrender your conscientious beliefs with respect to the

3  evidence, however -- some of this is repetitious but sometimes

4  repetition has its value.

5          It is your duty as jurors to consult with one

6  another and to deliberate with a view toward reaching an

7  agreement if you can do so without violence to your individual

8  judgments.  I repeat these things to you.  Now, each of you

9  must decide the case for yourselves but apart from the process

10  of individual decision is a consideration of all the evidence

11  and of the views of your fellow jurors and in the course of

12  your deliberations you should not hesitate to reexamine your

13  own views and change your opinions if you are convinced that

14  your opinion is erroneous.  So, reexamination is the big word

15  and you may want to reflect upon whether or not it might be

16  appropriate for you to reexamine your views in the face of all

17  the evidence and what you folks are talking about with each

18  other.

19          But you must examine the questions submitted to you

20  with candor and frankness and with proper consideration for

21  one another's opinions.  Listen carefully to each other's

22  opinions.  Each of you should give attention to and respect

23  the views of the other, I assume that's what you're doing, you

24  seem to be working very hard and my suspicion is that you

25  folks are really trying to do that but reevaluate all that.

1    Listen to each other's arguments with a disposition

2  to keep your own views under continuing review.  Thus, each

3  juror ought to consider whether his or her own appraisal of

4  the evidence is a correct one and should consider whether this

5  appraisal makes no effective impression upon one or another of

6  his or her fellow jurors who bear the same responsibility to

7  serve under the sanctions of the same oath which you've been

8  given and you know how important that is and have heard the

9  same evidence.

10    So, you know, you're going to appraise the evidence,

11  you're going to determine whether you believe it is a correct

12  one, certainly you're entitled to hold firm to that belief and

13  to consider whether your appraisal makes no effective

14  impression upon one or another of your fellow jurors.  It

15  doesn't mean you have to give in but this is part of the

16  reexamining process which I want you to reflect upon.

17    Now, I cannot and I should not know the course of

18  your deliberations and what I'm saying may be ill suited to

19  deal with the differences that you have expressed in terms of

20  not being able to come to an agreement apparently on that one

21  charge, I don't know whether that's what you're hung up about

22  but from what you wrote to me I assume that that might be the

23  case.  I ask, however, that you resume your deliberations and

24  remind you that no juror should yield a conscientious belief

25  that he or she may have as to the weight or the effect of the

1 evidence.  I remind you you must decide the case based upon

2 the evidence and only the evidence.

3           So, I want you to be mindful of all of this.  You

4 now know you have all of the testimony you requested.  If you

5 have any further questions, let me know and continue with your

6 deliberations and see how it goes and you can stay as long as

7 you want, you don't have to go home at five, I mean it's all

8 up to you.  We've had situations where jurors wanted to stay

9 late and we'll certainly accommodate that, including bringing

10 in dinner if that's what you want.  Nobody is under any

11 pressure.  The important thing is that whatever verdicts you

12 render will not be affected by the fact that we have a weekend

13 coming and Columbus Day.  That's important.  Continue your

14 good work and recommence your deliberations.

15           THE CLERK:  All rise.

16           (Jury leaves courtroom.)

17           (Time noted:  3:20 p.m.)

18           (Jury leaves courtroom.)

19           THE COURT:  All right.  Stay close by.  I have a

20 sense that things are happening and I think we spoon fed to

21 them appropriately where we're at in the course of their

22 deliberations.  We'll see how it goes.  But, you know, if in

23 fact they don't come to a verdict at the end of the day, they

24 still say they're at an impasse for one count, I may entertain

25 a partial verdict at that time so just be mindful of that.

1          MR. DINNERSTEIN:  Your Honor, for the record, I

2    would have requested that you ask for a partial verdict at

3    this time.

4          THE COURT:  Okay.  You made the record.  Okay.

5          (Deliberations continue.)

6          (Continued on next page.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (The following takes place out of the presence of

2    the jury.)

3    (Time noted:  4:35 p.m.)

4    THE COURT:  All right.  We have now a note which

5    I've marked Court Exhibit 25.  The numbers are mounting.  It

6    was rendered at 4:15.  It says:  Request testimony by Dowdie

7    that is related to the attempted murder of Osbourne and says

8    we are leaving at 4:45 p.m.

9    So, we have a very responsible jury, they're not

10   rushing to judgment and they're willing to come back on

11   Tuesday which is admirable and I think that's the best way of

12   handling this, all right.

13   So, let's bring them in now.  It's going to take us

14   ten minutes to get copies of these documents.

15   Who is going to tell the jury which numbers they're

16   going to be getting?  You have that, Mike, handy?

17   MR. DuCHARME:  We've identified it, Your Honor.

18   THE COURT:  Give it to me and I'll tell them.  All

19   right.  So, counsel has agreed that the following is going to

20   be sent in to the jurors, they'll have it first thing Tuesday

21   morning, you want to make copies; it is going to be page 364,

22   line 20 to 372, line 13, and then 495, line 1 to 499, line 14.

23   The first is the direct and the second part is the cross,

24   correct?

25   MR. DuCHARME:  Yes, Your Honor.

1    THE COURT:  So, bring the jurors in.

2    (Jury enters courtroom.)

3    THE COURT:  All right, folks, I have your last note

4  that you rendered at 4:15.  I've marked it Court Exhibit

5  Number 25.  You requested the testimony of Dowdie that is

6  related to the attempted murder of Osbourne and you said you

7  want to leave at 4:45.

8         So, look, it is commendable, I mean obviously you

9  folks are taking your responsibilities most seriously which is

10 what you should do and you're willing to come back on Tuesday

11 and that's really commendable of all of you.  I always worry

12 about, you know, Friday afternoon verdicts for fear of the

13 fact that maybe somebody, you know, even subconsciously may

14 have been mindful of the fact that the weekend is coming and

15 here we have Columbus Day, I'm not going to require you to

16 come on Monday, you'll come back Tuesday at 10:00.  At that

17 time we'll have the testimony that you requested.  It is going

18 to take us a few minutes to make copies of it now and you want

19 to leave in a few minutes anyway so I guess we'll just have it

20 for you when you get back at 10:00.

21        What you'll be getting is the direct of Dowdie which

22 would be page 364 starting at line 20 and ending at 372, line

23 13, I guess it includes line 13, and you'll get the cross

24 which will run from page 495, line 1 through 499, line 14.

25 You'll have them waiting for you at 10:00 when you return on

1 Tuesday.

2       Now, we have three days and certainly you can mull

3 about the case and think about it to yourselves, you may get

4 up in the middle of the night thinking about something, so be

5 it, or you may decide to wash it out of your mind and wait

6 till you get back on Tuesday and enjoy the three days. So,

7 you know, it depends on how the good Lord made you whether you

8 think about it or whether you don't think about it but the

9 important thing is don't talk to anybody else about it.

10       Now, that's going to be tough for you to do because

11 you've been really talking about a lot of things obviously and

12 you may really want to -- not be able to resist the temptation

13 of passing it by someone what do you think about this or think

14 about that. You've got to try not to do it. Nobody is going

15 to be there to monitor you so if you do it, you'd get away

16 with it. Don't do it. It is best that we keep the process

17 pure the way it's supposed to be.

18       Rest up a little bit. You obviously have been

19 working very hard, I can tell by looking at your faces that

20 you haven't been pulling jokes there. So, we'll see you at

21 10:00. I'm proud of all of you. Have a good three days off.

22 You deserve it.

23       THE CLERK: All rise.

24       (Jury leaves courtroom.)

25       THE COURT: Okay. We have another matter.

1    THE CLERK:  Yes, we have the sentencing.

2    THE COURT:  Let's call it.

3    MR. SMITH:  Have a nice weekend, Your Honor.

4    THE COURT:  Have a nice weekend.

5    (Time noted:  4:40 p.m.)

6    (Proceedings adjourned as above set forth.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25